**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| CEONNI DUNN, | * | |
| Plaintiff, | * | Civil Action No. 8: 25-cv-01959-PX |
| v. | * | |
| SIX FLAGS AMERICA, LP *et al.*, | * | |
| Defendants. | * | |

***

**MEMORANDUM OPINION**

Pending are Six Flags America, LP ("Six Flags") and International Board of Credentialing and Continuing Education Standards, LLC ("IBCCES") (collectively "the Defendants")'s motions to compel arbitration or alternatively to dismiss, stay, or transfer this matter based on the first-to-file rule. ECF Nos. 19 & 20. The motions are fully briefed, and the Court needs no hearing. *See* Loc. R. 105.6. For the following reasons, Defendants' motions are denied.

## I. Background

Plaintiff Ceonni Dunn ("Dunn") suffers from severe anxiety disorder, associated compulsions, and debilitating panic attacks. ECF No. 4 ¶ 1. Dunn uses a service dog to warn her of oncoming attacks. *Id.* ¶ 66. On June 7, 2024, Dunn visited the Six Flags amusement park ("the Park") in Prince George's County, Maryland, with her service dog after she purchased a ticket online. *Id.* ¶ 71.

Dunn had been at the Park for several hours when Six Flags' employees told her she could not have her dog at the Park and could not "request an accommodation onsite." ECF No. 4 ¶ 81. Rather, Six Flags requires visitors who seek disability accommodations to submit an online application to IBCCES at least 48 hours before visiting the Park. *Id.* ¶¶ 18–20. IBCCES must

next "approve[]" the accommodation and grant a visitor an access card. *Id.* ¶ 19. Because Dunn had not taken these steps, Six Flags told her she needed to leave without receiving a refund or she had to put the service dog in her car. *Id.* ¶¶ 81–82.

On May 7, 2025, Dunn filed a class action complaint in Prince George's County Circuit Court against IBCCES and Six Flags. ECF No. 3. Six Flags is a local corporation "in the business of owning and operating an amusement park" located in Bowie, Maryland. ECF No. 4 ¶ 2. The Park is thus a "place of public accommodation," subject to pertinent county codes. *Id.* ¶ 3. The four classes in the current suit are likewise restricted to those who visited or sought to visit solely the Park in Maryland, and are defined as:

> (1) all persons who applied for an [access card] with respect to Six Flags America between May 7, 2022, and the present, whether they were approved or denied for the [access card]; (2) all persons who were denied a reasonable accommodation at Six Flags America by Guest Services at the park because they had not timely obtained an [access card] prior to arrival; (3) all persons who were denied a reasonable accommodation by Six Flags America's in-park staff because such persons did not have an [access card]; and (4) all persons who were denied a reasonable accommodation by Six Flags America's Guest Services or in-park staff because such persons, whether or not they had an [access card], did not appear to in-park staff to have a disability that would entitle such persons to an accommodation.

*Id.* ¶ 47.

Dunn next amended the complaint to bring three causes of action: disability discrimination in violation of Prince George's County Code § 2-200 (Count I); negligence (Count II), and unjust enrichment (Count III). ECF No. 4 ¶¶ 90–138. Dunn, more particularly, contends that the IBCCES pre-screening process is "arbitrary and discriminatory" in that it imposes "undue burdens on disabled individuals" and results in "discriminatory denial" of "reasonable accommodations." *Id.* at 2. As relief, Dunn pursues compensatory damages and attorneys' fees for the alleged historical misconduct, and injunctive relief prohibiting further "collection of any private contact, confidential

medical, or privileged behavioral health information" as part of the Park's disability screening protocol. *Id*. at 34.

Defendants noted removal under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). ECF No. 1. They now move to compel arbitration or alternatively to dismiss, stay, or transfer the case pursuant to the first-to-file rule. ECF Nos. 19 & 20. Dunn opposes arbitration principally because the parties never formed a validly binding agreement to arbitrate. ECF No. 32. Because Dunn's argument turns on several provisions within the relevant Agreement, the Court details the terms below.

The Agreement is a 13-page document divided into several sections; each separated with prominent, bolded titles. ECF No. 19-2 at 7–21. The first section, entitled, "**Six Flags Admissions Product Terms & Conditions**," sets out the basics of the contractual relationship. ECF No. 19-2 at 7. It plainly states: "the following terms and conditions apply to all Six Flags admissions products, including . . . [Passes] and single day tickets." *Id*. The Agreement distinguishes between "Pass holders" and "Single Day Ticket" purchasers. *See* ECF No. 19-2. "A Pass is valid from the time it is purchased until the end of the stated period for such Pass." *Id*. at 8. By comparison, "Six Flags single day tickets are only valid for admission on the date printed on the front of the Ticket, unless [the customer has] purchased an any day ticket, which entitles [the customer] to admission one-time on any public operating day in the operating season in which the Ticket is purchased." *Id*. at 8. Regardless of the "product" purchased—Pass or ticket—once the purchase is completed, the customer has accepted the Agreement terms. *Id*. at 7.

Next, the section titled "**DISPUTE RESOLUTION BY BINDING ARBITRATION AND CLASS ACTION WAIVER**" sets forth the relevant arbitration terms. ECF No. 19-2 at 14 (emphasis in original) ("Arbitration Provision"). It begins: "PLEASE READ THIS SECTION

CAREFULLY. IT AFFECTS YOUR RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT. THERE IS NO JUDGE OR JURY IN ARBITRATION, AND DISCOVERY PROCEDURES AND APPELLATE RIGHTS ARE MORE LIMITED THAN IN COURT." *Id*. at 14 (emphasis in original). The Arbitration Provision states,

> Except as expressly noted below, any dispute between you or any other admissions product holders for whom your [sic] purchased an admissions product and Six Flags or any of its subsidiaries or affiliates arising under, out of, in connection with these terms and conditions, this site, content, or Six Flags' or its subsidiaries' or affiliates' applications, products or services must be submitted to binding arbitration under the authority of the Federal Arbitration Act.

*Id.* at 14–15 (citation modified).

The Arbitration Provision also discusses how the provision terms may be modified. The "**Future Terms Changes**" subsection reads:

> Although Six Flags may revise the Terms in its discretion, Six Flags does not have the right to alter the Terms to arbitrate or the rules specified herein with respect to any Dispute once that Dispute arises if such change would make arbitration procedures less favorable to the claimant. Whether charged procedures are less favorable to the claimant is an issue to be decided by the arbitrator, and if multiple claimants are proceeding in Coordinated Cases, the applicability of revised terms to the Coordinated Cases will be decided by the arbitration provider as a process matter.

*Id*. at 18–19 (emphasis in original).

A similar provision exists at the end of the Agreement, under the heading, "**Miscellaneous**." ECF No. 19-2 at 20 (emphasis in original). This broadly worded provision accords Six Flags power to unilaterally change any terms of the Agreement. *Id*. It reads:

> *All terms, conditions and benefits* including, but not limited to, admission privileges, Blockout Dates, prices, Pass type availability, parking locations, benefits and discounts *are subject to restrictions, availability, and change or cancellation without notice at any time*. (1) Six Flags reserves the right to vary these terms and conditions by giving Pass holders no less than 30 days' written notice of such variation by using the details provided during the purchase or Pass holder registration process. (2) Six Flags may delay or waive enforcement of any of the provisions of these terms and conditions without losing its right to enforce the same

> or any other provision later; (3) Pass holders waive the right to receive notice of any waiver or delay or presentment, demand, protest or dishonor.

*Id.* at 21 (emphasis added).

With these facts in mind, the Court turns first to the motion to compel arbitration pursuant to the Agreement.

**II. Motion to Compel Arbitration**

The Federal Arbitration Act, 9 U.S.C. §§ 1–16, governs the Court's review of a motion to compel arbitration. To prevail, the movant must show the existence of (1) a dispute between the parties; (2) a written arbitration provision that purports to cover the dispute; (3) a relationship between the transaction and interstate or foreign commerce; and (4) the failure of a party to arbitrate the dispute. *See Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991).

The parties do not contest that the Arbitration Provision covers the claims, if the provision is found valid. See ECF No. 19-1 at 17; ECF No. 20-1 at 9–11; ECF No. 32-1 at 3–4. Rather, Dunn presses a more fundamental point: that because the Agreement permits Six Flags to modify any terms or conditions at any time, including the Arbitration Provision, the parties' agreement to arbitrate is illusory because it lacks consideration, and thus does not constitute a binding contract. ECF No. 32-1 at 2–9.

Where the parties dispute whether an agreement to arbitrate was ever formed, the Court treats the motion as one for summary judgment. *See Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 454 (D. Md. 2020). The Court may consider documents outside the pleadings "to effectively assess the merits of this motion." *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683–84 (D. Md. 2004).

Dunn principally argues that two provisions in the Agreement grant Six Flags unilateral authority to change any contractual provision without notice at any time, thus allowing Six Flags

to "escape all of its contractual obligations at will." ECF No. 32-1 at 4 (citing *Johnson v. Continental Finance Company*, *LLC*, 131 F.4th 169, 178 (4th Cir. 2025)). The Court agrees.

In Maryland,[1] for an arbitration provision "to be binding and enforceable," it "must be a valid contract." *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (citing *Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656, 661, 668 (Md. 2003)). A contract is formed only where the promises within it are supported by adequate consideration. *Id.* A promise itself "becomes consideration for another promise only when it constitutes a binding obligation." *Id.* (quoting *Cheek,* 835 A.2d at 661). But where one contracting party retains unilateral power to change contract terms without restriction and "avoid all of its [contractual] obligations," then the promises are illusory, and thus lack consideration. *Johnson*, 131 F.4th at 178 (citation omitted). *See also Cheek*, 835 A.2d at 662; *Bailey v. Mercury Fin., LLC*, 694 F. Supp. 3d 613, 623 (D. Md. 2023), *aff'd,* No. 23-2133, 2025 WL 763671 (4th Cir. Mar. 11, 2025).

Turning first to the Arbitration Provision, the section entitled "Future Terms Changes," makes clear that "*Six Flags* may revise the Terms in its discretion." ECF No. 19-2 at 18 (emphasis added). Plainly, only Six Flags retains the power to change terms at will and without notice. *See also id.* at 14 ("Admissions Products provide the holder with revocable privileges which *may be cancelled or revoked by Six Flags at any time without notice or refund.*"); *id.* at 20 ("All terms, conditions and benefits including, but not limited to, admission privileges, Blockout Dates, prices, Pass type availability, parking locations, benefits and discounts are subject to restrictions, availability, *and change or cancellation without notice at any time*.") (emphases added). Further, because Six Flags may later change any promise it had made at the time the customer accepted the

[1] The parties do not dispute that Maryland substantive law applies to the contract formation question. See ECF No. 19-1 at 15; ECF No. 20-1 at 9–10; ECF No. 32-1 at 3–4.

Agreement, including the terms of the Arbitration Provision, the "promises" are illusory and lack valid consideration. Thus, the parties never formed a valid agreement to arbitrate.

Six Flags, in response, tries mightily to read "critical limitations" into its unilateral power to change the Arbitration Provision. ECF No. 42 at 6 (relying on *Holloman v. Cir. City Stores, Inc.,* 894 A.2d 547, 592–93 (2006)). First, Six Flags contends that the Miscellaneous provision limits Six Flags' unilateral right to change terms without notice. *Id*. at 5–6. True, the Miscellaneous provision reads that Six Flags may not change any terms without giving at least 30-days' advance notice to *Pass holders*. ECF No. 19-2 at 20–21 ("Six Flags reserves the right to vary these terms and conditions by giving *Pass holders* no less than 30 days' written notice of such variation.") (emphasis added). But a "pass" is only one of the "products" to which the Agreement applies. *See* ECF No. 19-2 at 7. For a "ticket,"—which is what Dunn purchased—no comparable limitation exists.[2] Further, the Miscellaneous provision actually reinforces that Six Flags retains unilateral power to change "[a]ll terms, conditions, and benefits . . . *without notice at any time*." *Id*. at 21 (emphasis added). Accordingly, because nothing in the plain language of the Agreement, when read as a whole, limits Six Flags' right to change the Arbitration Provision without warning as to ticket holders like Dunn, the agreement to arbitrate is illusory and therefore unenforceable. *See Cheek*, 835 A.2d at 663; *Johnson,* 131 F. 4th at 179; *Coady v. Nationwide Motor Sales Corp.*, 32 F.4th 288, 293 (4th Cir. 2022).

Six Flags next contends that the Arbitration Provision is not illusory because its power to unilaterally change its terms does not apply once "a dispute arises." ECF No. 42 at 6 (quoting

[2] Throughout, the Agreement distinguishes between purchasers of a "Pass" and those who buy a "ticket." *See, e.g.,* ECF No. 19-2 at 8 ("single day tickets" are valid for admission on the date printed or on any public operating day for "an any day ticket"); *id*. at 10 ("pass holders will be eligible to receive periodic mailers and newsletters and other communications about Six Flags."); *id.* (Pass holders who opt out of receiving communications may not learn about "special Pass holder events and opportunities"); *id*. at 12–13 ("From time to time, select third parties may also offer discounts/benefits to Pass holders").

ECF No. 19-2 at 18–19). The applicable provision does read that "[a]lthough Six Flags may revise the Terms in its discretion, Six Flags does not have the right to alter the Terms to arbitrate or the rules specified herein with respect to any Dispute *once that Dispute arises* if such change would make arbitration procedures less favorable to the claimant." ECF No. 19-2 at 18–19 (emphasis added). Thus, says Six Flags, these limitations align closer to those identified in *Holloman* which rendered an arbitration agreement sufficiently definite to constitute a mutual promise to arbitrate. ECF No. 42 at 7 (citing *Holloman,* 894 A.2d at 592–93). The limiting language in *Holloman,* however, provided thirty-days advance notice of a proposed modification and limited the time the defendants could alter the provision to *one* day per year. *Holloman,* 894 A.2d at 592. Thus, the court reasoned that the effective 364-day window where the parties were bound by specific arbitration terms was sufficiently definite to render enforceable the promise to arbitrate. *Id.* at 592–93.

This case bears little resemblance to *Holloman*, at least in the ways that matter. Unlike *Holloman,* a Six Flags ticket holder enjoys no definite time by which she is predictably bound by the arbitration terms. Indeed, until a "dispute arises,"—if ever—the unilateral change clause renders Six Flags' promises "entirely illusory," as Six Flags may change or eliminate those promises at any time. *Cheek*, 835 A.2d at 662. Thus, because the Arbitration Provision "created no real binding promises" regarding the agreement to arbitrate, it is unenforceable. *See Johnson v. Cont'l Fin. Co., LLC,* 690 F. Supp. 3d 520, 530 (D. Md. 2023), *aff'd*, 131 F.4th 169 (4th Cir. 2025). Defendants' motions to compel arbitration must be denied.

The Court turns next to Defendants' motions to dismiss, stay, or transfer this case under the first-to-file rule.

## III. Motion to Dismiss, Stay, or Transfer the Case Pursuant to the First-to-File Rule

Defendants next argue that because this case bears substantial similarity to a "first-filed" class action, *C.T., et al.. v. Six Flags Entertainment Corp. et. al*, Case No. 1:23-CV-01769-KES-CBD ("the *I.L.* Action" or "*I.L"*"),[3] this Court should either dismiss this case, transfer it to the Eastern District of California, or issue a stay pending the outcome of *I.L.* ECF No. 19-1 at 19; ECF No. 20-1 at 13. The first-to-file rule teaches that for the sake of judicial economy and comity, a substantially similar second-filed action should be stayed, transferred, or dismissed, absent a showing that the balance of equities favors maintaining it in its original forum. *Ellicott Mach. Corp. v. Mod. Welding Co.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974) (citing *Remington Prods. Corp. v. Am. Aerovap, Inc.*, 192 F.2d 872, 873 (2d Cir. 1951)). *See also Intellor Grp., Inc. v. Cicero*, Civ. No. TDC-19-0010, 2019 WL 1643549, at *3 (D. Md. Apr. 16, 2019). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991). To ascertain whether the first-to-file rule applies, the Court considers "(1) the chronology of the filings, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Intellor*, 2019 WL 1643549, at *3 (citation omitted). Notably, the first-to-file rule "is not inflexible[,]" *id*. Rather, the rule "yields to the interests of justice, and will not be applied when a court finds compelling circumstances supporting its abrogation." *LWRC Int'l, LLC v. Mindlab Media, LLC*, 838 F. Supp. 2d 330, 337–38 (D. Md. 2011) (citing *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir. 1990)).

[3] Since the parties filed their briefs in this case, the named plaintiff, "I.L." withdrew from the action, prompting a change in class-representation. *See I.L.* Action at ECF No. 73. Nonetheless, the parties refer to the matter as the "*I.L.* Action" and so the Court follows suit.

Turning to these factors, although clearly this case trails the *I.L.* Action and involves similar challenges to a "pre-screening" accommodations process, the actions otherwise do not overlap sufficiently enough to warrant application of the first-to-file rule. *Compare I.L.* Action, ECF No. 67 *with* ECF No. 4. For the issues to align sufficiently, the result should be that resolving one case leaves little to be determined in the other. *Intellor Grp., Inc.*, 2019 WL 1643549, at *4 (citation omitted). While the classes in both actions accuse Six Flags of discriminating as part of a "pre-screening" process, *I.L.* includes a nationwide class action challenging an array of violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, *et seq*. *See I.L.* Action, ECF No. 67 ¶¶ 138–147. The class more particularly alleges that Six Flags Entertainment Corp. and its member defendants violated 42 U.S.C. § 12182(b)(1)(A)(i) by denying the nationwide class "the opportunity . . . to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity"; § 12182(b)(1)(A)(ii) by affording to the class a "benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals"; § 12182(b)(1)(A)(iii) by providing the class "on the basis of a disability …, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals . . . "; § 12182(b)(1)(D) by using "standards or criteria or methods of administration . . . that have the effect of discriminating on the basis of disability; [and/]or . . . that perpetuate the discrimination of others who are subject to common administrative control"; and § 12182(b)(2)(A)(i) for imposing or applying "eligibility criteria that screen[s] out or tend[s] to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations."

*See I.L.* Action, ECF No. 67 ¶¶ 143–144. The nationwide class, moreover, seeks exclusively injunctive relief for the ADA claims. *See id.* ¶ 147.

This suit, by contrast, is uniquely local in scope. Dunn and the putative class sue one—now defunct—Six Flags Park that had been located in Maryland. Because the Park is no longer in operation, ADA injunctive relief is a moot point. Instead, the class in this suit pursues claims for violation of the Prince George's County Code prohibiting public-accommodations discrimination and two companion common law claims. ECF No. 4 ¶¶ 90–138. The County Code, moreover, provides for money damages and other related "redress of injury," not available under the ADA. *See* Prince George's County Code § 2-200. Accordingly, even if the *I.L.* Action and this case have some overlap on questions of liability, *I.L.* would not accord this class the money damages available under the County Code.[4] Thus, the first-to-file rule is a poor fit.

Additionally, the equities, or "balance of conveniences" counsel in favor of hearing the matter in this forum. *See Intellor Grp., Inc.*, 2019 WL 1643549, at *5 (citation omitted). In assessing the "balance of conveniences," courts consider the same factors articulated in the transfer statute, 28 U.S.C. § 1404. First, the Court asks whether "[f]or the convenience of parties and witnesses" and "in the interest of justice," a case should be transferred to another district in which the case could have been filed. *Id.*; *see also Kontoulas v. A.H. Robins Co.*, 745 F.2d 312, 315 (4th Cir. 1984). On this point, it is not at all clear how this case could have been brought in the Eastern District of California. Six Flags America, LP operated in Maryland and had its principal place of business in Maryland, and IBCCES has its principal place of business in Florida. ECF No. 4 ¶¶ 3–4. Dunn also resides in Maryland; the events giving rise to the claims took place in Maryland;

---

[4] More recently, the *I.L.* Action has been stayed pending consummation of a settlement agreement that includes "multi-faceted injunctive relief." *See I.L.* Action, ECF Nos. 103–107. This impending settlement, with its focus on ADA injunctive remedies, further counsels against transferring or staying this case brought against a shuttered amusement park.

and the causes of action are all grounded in Maryland statutory and common law. *See* ECF No. 4 ¶¶ 90–138.

Nor do any of the remaining § 1404 factors counsel in favor of transfer. Those factors are: (1) the weight accorded to the plaintiff's choice of forum; (2) witness convenience and access to sources of proof; (3) the convenience of the parties; and (4) the interest of justice. *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). As to the first factor, Dunn's preference is afforded "substantial weight in determining whether transfer is appropriate." *Id.* The deference given to the plaintiff's choice of forum, however, should be proportional to the relationship between the forum and the cause of action. *See Intellor Grp., Inc*, 2019 WL 1643549, at *5 (citing *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237–38 (2d Cir. 2004)). Here, Dunn filed a state class action alleging only common law and local statutory claims for events that occurred in Prince George's County, Maryland. ECF No. 4. Thus, Dunn's choice of forum is afforded substantial weight.

Second, witness convenience is "[p]erhaps the most important factor to be considered," *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000). The lion's share of the events occurred in Maryland, and Defendants make no showing that any witnesses would particularly "suffer if the case were heard in the plaintiff's chosen forum." *Dow v. Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002). Accordingly, this factor also weighs in favor of the case proceeding here.

Third, the convenience of the parties "is chiefly operative in cases where the plaintiff chooses a forum away from [either party's] home." *Bd. of Trs., Sheet Metal Workers Nat. Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1259 (E.D. Va. 1988). But where, as here, the plaintiff resides in the forum state and the matters at hand focus on questions of Maryland

state law, any relative inconvenience that arises from denying transfer pales in comparison to honoring the chosen forum. *MedServ Int'l, Inc. v. Rooney*, No. 8:05-CV-3173-AW, 2006 WL 8457082, at *3 (D. Md. Feb. 7, 2006) (holding that the convenience-of-the-parties factor did not "militate persuasively in favor of transfer" where the plaintiff chose to file in his district of residence). This is especially so where, as here, the putative class is limited by the Park's location in Maryland.

Last, the interests-of-justice inquiry encompasses all other relevant considerations apart from witness and party convenience. *See Topiwala v. Wessell*, No. 1:11-CV-0543-WDQ, 2012 WL 122411, at *8 (D. Md. Jan. 12, 2012) (citing *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 857 (D. Md. 2005)). This includes whether the plaintiff's chosen venue maintains sufficient familiarity with the underlying substantive law and whether any local interests would favor resolution of the issues in the place they occurred. *See id.; see also Maiden Biosciences, Inc. v. MPM Med., Inc.*, No. 1:17-CV-3029-RDB, 2018 WL 2416071, at *5 (D. Md. May 29, 2018). Because the class claims are governed exclusively by Maryland law, Maryland citizens maintain a keen interest in the ultimate resolution, certainly greater than the California citizenry. And a Maryland court would likely be better versed in Maryland common law than a court in California. For these reasons, even if the first-to-file rule strictly applied, the equitable considerations provide substantial cause to keep the action in this forum. Thus, Defendants' motions to dismiss, transfer, or stay the case pursuant to the first-to-file rule are denied.

## IV. Conclusion

For the foregoing reasons, the Court denies Six Flags' and IBCCES's Motions to Compel Arbitration or alternatively Motions to Dismiss, Stay, or Transfer this matter based on the first-to-file rule. ECF Nos. 19 & 20. A separate Order follows.

08/13/2026
Date

/s/
Paula Xinis
United States District Judge